IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

FREDRICK W. (RICK) ULMER, III,
an individual,

        Plaintiff,

vs.

MCGRIFF INSURANCE SERVICES, INC.,
a North Carolina corporation,

        Defendant.
_____/

## COMPLAINT

Plaintiff Fredrick W. (Rick) Ulmer, III ("*Ulmer*") files this Complaint against Defendant McGriff Insurance Services, Inc. ("*McGriff*"), and states as follows:

### Jurisdiction, Parties, and Venue

1. Ulmer is a resident of and domiciled in Florida.

2. McGriff is a North Carolina corporation with its principal place of business and "nerve center" in Raleigh, North Carolina.

3. The Court has personal jurisdiction over McGriff, which is engaged in substantial and not isolated activity in Florida, namely operating at least 13 retail insurance offices throughout Florida, including in Miami-Dade County. Further, McGriff consented to jurisdiction in Florida in the Employment Agreement (as defined below).

4. Venue is proper in this District under 28 U.S.C. § 1391(b) because McGriff resides within this District and because McGriff consented to venue in this District in the Employment Agreement (as defined below).

1

5. This is an action for declaratory relief to interpret a restrictive covenant under Florida law. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), as there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. Indeed, the job that McGriff is trying to block Ulmer from performing pays him multiples of $75,000 per year.

6. All conditions precedent to the maintenance of this action have occurred or otherwise been waived or would be futile.

7. Ulmer has retained undersigned counsel to represent him in this action and is required to pay counsel a reasonable fee for their services.

**Factual Allegations**

8. According to its website, McGriff is "one of the top 10 largest insurance brokers in the world," with over 120 office locations and over $11 billion in premiums. *See* https://www.mcgriff.com/about.html.

9. From January 1, 2019 to August 10, 2021, Ulmer served as the President and CEO of McGriff's retail division, *i.e.,* the division of McGriff that sold insurance in the retail marketplace.

10. In this role, Ulmer was responsible for overseeing the retail division and its thousands of employees, performing the traditional role of a CEO over that division.

11. While working for McGriff, Ulmer signed an Employment Agreement (the "***Employment Agreement***"), a copy of which, redacted to remove compensation amounts, is attached as **Exhibit "A."**

12. The Employment Agreement provides that it can be terminated by Ulmer at any time, without notice:

> 4. Term and Duration of Employment; Termination; Definitions.
>
>    (a)   In consideration of the Agreement's nonsolicitation and confidentiality provisions, Employee's employment with MIS shall commence on the Effective Date and shall expire on July 1, 2020 (the "Term") or, if sooner, upon the first to occur of the following:
>
>    (i)   MIS terminates Employee's employment For Cause (as defined below) or Employee voluntarily terminates his employment other than For Good Reason (as defined below). In either event, Employee will not receive compensation or any other benefits after such termination except to the extent earned and vested prior to termination.

13. The Employment Agreement also contains a narrow post-employment non-competition restriction:

> 12. Noncompetition. In connection with the employment of Employee by MIS, the payment of compensation to Employee, the Term and any Renewal Period of this Agreement, Employee agrees that, unless specifically authorized by MIS in writing, Employee will not, for a period of two (2) years following the date of termination of Employee's employment with MIS (whatever the reason for the end of the employment relationship), directly or indirectly, own any interest in, operate, join, control or participate as a partner, director, principal, officer, employee or agent of, act as a consultant to, or perform any services for any Competitive Business in a capacity identical or similar to that in which Employee worked for MIS within the "Restricted Territory" (as defined above).

14. Importantly, this provision only prohibits Ulmer from working "for any Competitive Business in a capacity identical or similar to that in which Employee worked for [McGriff.]"

15. In turn, "Competitive Business" is defined as a retail insurance enterprise:

> (ii)   "Competitive Business" means a retail insurance enterprise that is in the business of selling, trading, or servicing insurance products and services that are competitive with those offered by BBTIH Retail during the term of Employee's employment with MIS.

Employment Agreement at 11(b)(ii).

16. After leaving McGriff, Ulmer accepted a position with Alliant Insurance Services, Inc. as the Executive Vice President and Managing Director, Mergers and Acquisitions, for the Alliant Underwriting Solutions division ("*AUS*").

17. AUS is Alliant's managing general agent and program-administration business division. This unit's business activities are separate and distinct from the retail division.

18. At McGriff, the managing general agent/program-administration business was housed in an entirely separate division from the retail division.

19. As an Executive Vice President/Managing Director ("*EVP*") for AUS, Ulmer is clearly not serving in a capacity identical or similar to a CEO, let alone CEO of a retail enterprise. Ulmer is not a c-level executive, as he was at McGriff. For context, Alliant has 139 EVPs, including 7 EVPs housed in AUS.

20. Ulmer has a project-focused position with a limited scope, concentrated on mergers, acquisitions, and integrations for AUS. He will not be supervising any employees.

21. Thus, Ulmer's position at AUS is not "identical or similar" to his role as the CEO of McGriff's retail division.

22. Further, AUS is not a "Competitive Business" under the Employment Agreement because it is not a "retail insurance enterprise."

23. Additionally, McGriff does not have a legitimate business interest under Section 542.335, Florida Statutes, in preventing Ulmer from working in a non-retail mergers and acquisitions position for AUS.

24. In sum, Ulmer's position at AUS does not violate the Employment Agreement.

25. Notwithstanding the above, on August 16, 2021, McGriff's attorney sent Ulmer a letter asserting that "You have violated the non-competition provision in the Agreement by accepting employment with Alliant." A copy of this letter is attached as **Exhibit "B."**

26. To reach this conclusion, McGriff selectively quotes the Employment Agreement.

27. Indeed, this letter replaces with an ellipsis the key qualifying language "in a capacity identical or similar to that in which Employee worked for MIS":

> The Agreement imposes certain restrictions on you during and after your employment with McGriff. In particular, the Agreement contains non-competition and confidentiality provisions. As such, you have agreed that for a period of two years following your termination date, you will not "directly or indirectly, own any interest in, operate, join, control or participate as a partner, director, principal, officer, employee or agent of, act as a consultant to, or perform any services for any Competitive Business . . . within the Restricted Territory . . ." The Agreement further prohibits you from disclosing any Confidential Information, including customer lists, contacts and other information regarding customers of McGriff; and strategic plans and financial information of McGriff or BBTIH.

28. The letter further wrongfully asserts that Ulmer needed to give McGriff 60-days' notice before terminating the Employment Agreement.

29. But there is no notice required under the Employment Agreement in these circumstances.

30. The 60-day notice provision McGriff apparently refers to only applies when either Ulmer or McGriff decide not to renew the agreement at the end of a term (rather than permit an automatic renewal of the term), not when either terminates earlier in the term.

31. Paragraph 4(a)(i) states that the term expires "upon the first to occur of the following: . . . Employee voluntarily terminates his employment other than For Good Reason (as defined below)." No notice is required for such a termination, as occurred here.

32. Later, paragraph 4(a)(v) provides that the Agreement will automatically renew "unless this agreement is otherwise earlier terminated" or "either party gives [60 days'] notice . . .

before the end of the current term, that it does not wish to renew this Agreement for an additional term."

33. Here, the Agreement was "earlier terminated" by Ulmer, and thus paragraph 4(a)(v) and its notice provision regarding non-renewal is inapplicable.

34. According to McGriff's letter, it has also sent a letter notifying Alliant that "its act in employing you, in violation of this Agreement, is actionable under the law." This incorrect statement is tortiously interfering with Ulmer's relationship with Alliant, for which Ulmer reserves all rights.

## COUNT I – DECLARATORY JUDGMENT

35. Ulmer incorporates the allegations in paragraphs 1 through 34.

36. There are actual, presently existing, substantial, continuing controversies between Ulmer and McGriff that are not conjectural, hypothetical, or contingent.

37. First, the parties dispute whether Ulmer's position with AUS violates the Employment Agreement.

38. Second, the parties dispute whether the Employment Agreement required Ulmer to give 60 days' notice of termination.

39. Ulmer and McGriff have adverse interests, as they take opposite positions on the above two issues.

40. Ulmer has suffered and is suffering actual or threatened injuries as a result of McGriff's incorrect legal position and direct communication with Alliant regarding the so-called violation of the Employment Agreement.

41. Ulmer's actual or threatened injuries can be traced to McGriff's conduct.

42. Ulmer's injuries can be redressed by the granting of the requested declaratory relief.

WHEREFORE, Ulmer requests (a) a declaration that (1) his position at AUS does not violate the Employment Agreement, and (2) he was not required to give any notice before terminating the Employment Agreement; (b) attorneys' fees, including pursuant to Section 542.335(k), Florida Statues, and costs; and (c) any other relief the Court deems just and proper.

Dated: August 18, 2021.

s/Eric W. Ostroff
Eric W. Ostroff
Florida Bar No: 10130
eostroff@melandbudwick.com
Alina Gomez
Florida Bar Number: 1010500
agomez@melandbudwick.com
MELAND BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 358-6363
Facsimile: (305) 358-1221
